## WASHINGTON HEIGHTS INDEPENDENT SCHOOL DIST. et al. v. CITY OF FORT WORTH.  (No. 2745.) *

(Court of Civil Appeals of Texas. Texarkana. March 29, 1923. Rehearing Denied April 19, 1923.)

**1. Municipal corporations ⬤ᷓ34—Extension of city limits by election amending charter held valid.**

Under Const. art. 11, § 5, giving cities of over 5,000 inhabitants power by a majority vote of the qualified voters to adopt or amend their charters subject to legislative limitations and constitutional restraints, put into operation by Acts 1913, c. 147 (Complete Tex. St. 1920 or Vernon's Sayles' Ann. Civ. St. 1914, arts. 1096a–1096i), which provided that charters already existing should remain in effect until amended or another charter adopted, and section 4 (article 1096d), which provided that in amending or adopting a charter a city could extend its boundary limits to include adjacent territory according to such rules as may be provided by the charter, the amendment of a charter by election held for the purpose to include adjacent territory was valid, regardless of the fact that the charter (Sp. Acts 1909, c. 31) contained a provision before it was amended as to changing boundaries.

**2. Municipal corporations ⬤ᷓ35 — Question whether town was legally annexed to city could not be raised in suit to which town was not party.**

In a suit by independent school district against a city to enjoin annexation of parts of the districts to the city, the question whether the annexation of an incorporated town lying in the districts, and which under Complete Tex. St. 1920 or Vernon's Sayles' Ann. Civ. St. 1914, art. 2851, had no control over the districts, was legal, could not be raised; the town not being a party to the suit.

**3. Schools and school districts ⬤ᷓ32—Annexation of parts of independent districts by city makes them a part of city district.**

Under Complete Tex. St. 1920 or Vernon's Ann. Civ. St. Supp. 1922, art. 2815c, providing that, when the limits of an incorporated city or town constituting an independent school district are extended to include any part of an independent or common school district, the territory so included shall become a part of the independent district of the town, except where decided otherwise by the election annexing such territory, and article 2856, providing that the general laws shall apply to all districts created by special acts of the Legislature or under general laws, the extension of a city's limits by election amending its charter in pursuance of acts 1913, c. 147 (Complete Tex. St. 1920 or Vernon's Sayles' Ann Civ. St. 1914, arts. 1096a–1096i), providing that a city could by adopting or amending a charter at an election held for the purpose extend its limits and annex adjacent territory, operated to annex to the independent district of the city the territory so annexed to the city, although it was already included in independent school districts,

this not being a diminishing or changing of such districts contrary to Complete Tex. St. 1920 or Vernon's Sayles' Ann. Civ. St. 1914, art. 2856b, which refers to an attempt to change or diminish such districts by vote of residents therein.

**4. Constitutional law ⬤ᷓ63(2)—Legislature can delegate power to city to annex independent school districts.**

Since the Legislature has power to annex to a city territory included in independent school districts, it can delegate the power to make the annexation to specified cities.

**5. Schools and school districts ⬤ᷓ41(1)—Schoolhouses and sites in territory annexed to city pass to city as a right appurtenant.**

Under Complete Tex. St. 1920 or Vernon's Ann. Civ. St. Supp. 1922, art. 2815c, providing that, where a city extends its limits to include independent or common school districts, if real property belonging to such district is within the territory annexed, the city may acquire it on terms agreed on by the city council and the authorities of the district, where a city, in pursuance of Acts 1913, c. 147 (Complete Tex. St. 1920 or Vernon's Sayles' Ann. Civ. St. 1914, arts. 1096a–1096i), extended its limits to include parts of independent school districts, schoolhouses and sites located within the annexed territory passed to the city as right appurtenant to the territory, or parcels so allotted or annexed to the city, which must allow the original districts their proper proportion of the improvements made upon the premises to be paid for after the accession; the statute not requiring payment before.

**6. Eminent domain ⬤ᷓ2(9)—Schools and school districts ⬤ᷓ41(3)—Judicial proceeding to determine value of property taken by city through annexation of part of independent district authorized if necessary; annexation does not result in taking property without compensation.**

Complete Tex. St. 1920 or Vernon's Ann. Civ. St. Supp. 1922, art. 2815c, providing that, on annexation of a portion of an independent or common school district to a city, real property belonging to such district may be acquired by the city, which may be paid for on terms agreed upon by the city council and the authorities of the district, merely authorizes the authorities to make a settlement, and, in absence of agreement, it allows a judicial proceeding, if necessary, to enforce adjustment of equities and compensation, so that such annexation does not result in taking property without just compensation.

**7. Schools and school districts ⬤ᷓ41(2)—City annexing parts of independent school districts must assume proportionate part of bonded indebtedness, and compensate original districts for property taken.**

Where a city, in pursuance of Acts 1913, c. 147 (Complete Tex. St. 1920 or Vernon's Sayles' Ann. Civ. St. 1914, arts. 1096a–1096i), extended its limits to include parts of independent school districts, it must assume its proportionate part of the outstanding bonded indebtedness, and must properly compensate the original districts for the property taken.

Appeal from District Court, Tarrant County; Bruce Young, Judge.

Suit by the Washington Heights Independent School District and others against the City of Fort Worth. From judgment for defendant, plaintiffs appeal. Affirmed.

This was an application for injunction against the city of Fort Worth, as a municipal corporation, by the trustees of the Washington Heights, Diamond Hill, Van Zandt, Rosen Heights, Arlington Heights, and Riverside independent school districts. The petition asked for relief by injunction against the following alleged acts:

"The city of Fort Worth in undertaking and attempting to annex to its boundaries adjacent and contiguous territory is further including a portion of the territory of the independent school districts aforesaid, and is attempting to confiscate such property and to appropriate such territory and the taxes and revenues derived from taxation therefrom belonging to the independent school districts, and to divert and to appropriate the same to the use and benefit of the defendant herein, and is demanding from the plaintiffs herein that they deliver to the defendant, the city of Fort Worth, all of said property belonging to the independent school districts herein together with all books, records, papers, and assets belonging to the independent school districts now in the lawful custody and possession of these plaintiffs, and is threatening to take all such property, books and records and assets by force if necessary," etc.

The city of Fort Worth answered the petition by a plea in abatement, general demurrer, and special exceptions. The court sustained a general demurrer to the petition of appellants, and this appeal is taken upon the action of the court.

As appears from the facts alleged, the city of Fort Worth is a municipal organization, and according to the last census, taken in 1920, had a population of 106,000 people. The city was granted a special charter under a special law passed by the Legislature in 1909 (Special Acts, p. 227). On June 10, 1922, the board of city commissioners of the city passed an ordinance providing for an election to be held July 22, 1922, submitting to the qualified voters of the city for their adoption or rejection certain proposed amendments to the existing charter. One of those amendments submitted to the voters for adoption or rejection was "to amend section 2, chapter 1, of the existing charter of the city of Fort Worth." Section 2, c. 1, of the existing charter provided:

"The corporate boundaries and limits of the said city of Fort Worth, as constituted and created by this act [meaning act 1909], are as follows: [Here follows description in metes and bounds]."

The city boundary limits proposed to be fixed, as alleged, by the amendment, included Niles City and portions of the territory of the several independent school districts. At the election held in the city on July 22, 1922, all the proposed amendments of the charter carried by more than a majority vote of the qualified voters of the city. An ordinance was then passed by the board of city commissioners adopting and carrying into effect the amendments.

It was alleged that each of the school districts is incorporated under the general laws of the state; and each has a governing body of seven trustees, who have the management and control of the affairs of the schools within their respective districts. The Washington Heights independent school district owns and maintains three school buildings, of the approximate value of $65,000, with equipment of the value of $6,000. It has an outstanding bonded indebtedness of $48,000, and has a scholastic population of 730 pupils, with an area of seven square miles. The Diamond Hill independent school district owns and maintains three substantial school buildings, of the approximate value of $125,000, with school equipment of the value of $15,000. It has an outstanding bonded indebtedness of $150,000, and has a scholastic population of 505 pupils, with an area of about seven square miles. The Van Zandt independent school district owns and maintains two brick school buildings, of the approximate value of $100,000, with school equipment of the value of $10,000. It has an outstanding bonded indebtedness of $110,000, and has a scholastic population of 445 pupils, with an area of two square miles. The Riverside independent school district owns and maintains three school buildings, of the approximate value of $115,000, with equipment of the value of $12,000. It has an outstanding bonded indebtedness of $115,000, and has a scholastic population of 1,018 pupils, with an area of three square miles. All of the above named school districts were adjacent and contiguous to the city of Fort Worth. It appears that the town of Niles City, adjoining the city limits of Fort Worth, is an incorporated town of about 2,700 inhabitants, and is located wholly within the Washington Heights and Diamond Hill independent school districts. This town was a part of the annexed territory, but the town of Niles City is not a party to this suit.

It appears that the portion of the Washington Heights independent school district included within the corporate limits of the city of Fort Worth consisted of three square miles of its area, and included 75 per cent. of its total assessed valuation, all of its school buildings and other property, and one-third of its scholastic population. The Diamond Hill independent school district included within the corporate limits of the city of Fort Worth consisted of three square miles of its area and included 80 per cent. of its total assessed valuation, all of its school buildings and other property, and one-fifth

of its scholastic population. The Van Zandt independent school district included within the corporate limits of the city of Fort Worth consisted of one and one-half square miles of its area and included 75 per cent. of its total assessed valuation, all of its school buildings, and other property, and three-fourths of its scholastic population. The Riverside independent school district included within the corporate limits of the city of Fort Worth consisted of two square miles of its area and included 80 per cent. of its total assessed valuation, all of its school buildings and other property, and 85 per cent. of its scholastic population.

It was further alleged that none of the residents of the several school districts were given the privilege of voting upon the annexation.

It further appears that the city charter (chapter 13, § 1) provides as follows:

"The city of Fort Worth is and shall continue to be and remain an independent school district, and as such shall have exclusive control of the public free schools within the territorial limits of said city, and this shall extend to all of the territory described in section 2 of this act."

It was not alleged in the petition that at the election held in the city of Fort Worth on July 22, 1922, it was determined by a majority of the voters in the city that the extended territory or limits of the city should not thereby become a part of the independent school district of the city.

The facts stated present all the essential and controlling points for decision.

Graves & Houtchens, C. F. Clark, M. M. Heath, and Burns, Christian, Gumm & Gordon, all of Fort Worth, and Brooks, Hart & Woodward, of Austin, for appellants.

R. E. Rouer, Raymond E. Buck, Gillis Johnson, and Bryan, Stone, Wade & Agerton, all of Fort Worth, for appellee.

LEVY, J. (after stating the facts as above). In this case the petitioners, the board of trustees, are seeking to prevent an alleged illegal taking or wrongful seizure of property and territory which, as claimed, exclusively belong to such independent school districts for taxation, control, and use. Taking the material facts as alleged as true, as must be done in passing on a general demurrer to a petition, the only real and substantial questions in the case are: (1) Is the extension of the city boundaries of Fort Worth, as voted by the qualified voters of the city on July 22, 1922, valid? and (2) if valid, did the portion of the territory of the several independent school districts included within the extended boundary limits of the city become a part of the independent school district of the city of Fort Worth? and (3) if so, does the right vest in the city of Fort Worth to take exclusive possession and control and use of all the property of the independent school districts located within the portion of the territory detached from the independent school districts and embraced within the boundary limits of the city?

[1] In determining the first question it is necessary to inquire into and decide whether or not the extension of the city limits was a void act either for lack of power on the part of the city to make such extension or for failure to take the necessary jurisdictional steps in the exercise of the power.

By the present section 5, art. 11, of the state Constitution the power is given to cities "having more than five thousand (5,000) inhabitants," by a majority vote of the qualified voters, to "adopt or amend their charters," subject to the limitations prescribed by the Legislature and to the restraints of the special constitutional provisions. By the act of 1913 (Acts 1913, p. 307 [Complete Tex. St. 1920 or Vernon's Sayles' Ann. Civ. St. 1914, arts. 1096a–1096i]) the Legislature put this constitutional amendment into operation. The act (section 1 [article 1096a]) empowered all cities of the class of "more than five thousand inhabitants," by a majority vote of the qualified voters of the city, at an election held for that purpose, to "adopt or amend their charters" as prescribed by the act. It was expressly provided that all charters existing at the time of the act granted by either general or special law should continue in force and effect with "all powers heretofore granted" and embraced in the terms of such charters unchanged "until" and unless the terms of such existing charters shall be subsequently "amended," or another charter "adopted." By section 4 (article 1096d) of the act the power, among others, specially bestowed upon cities of the class mentioned therein, in "adopting the charter" or in making "amendment" to an existing charter, was the following:

"The power to fix the boundary limits of said city, to provide for the extension of said boundary limits and the annexation of additional territory lying adjacent to said city, according to such rules as may be provided by said charter."

It is clear that the power exists to the city to proceed under its charter to make "extensions" of its limits and "annexations" of territory "according to such rules as may be provided by its charter," or by availing itself of the terms of the enabling act of 1913 the city of Fort Worth could fix its limits by amending any section of its organic charter of 1909 pertaining thereto. It is believed that, as appears, the city did avail itself of such act, and took the necessary steps to the valid establishment or change of its boundary lines for municipal purposes. It was alleged that at an election held for the purpose within the city a majority of the qualified voters voted in favor of the proposition submitted to them by the city commission, which was, "to amend section 2, chapter 1, of the existing charter

of the city of Fort Worth." Section 2 of chapter 1, the amendment of which was submitted to the voters, was the section fixing and describing the boundaries and limits of the city. The amendment enlarged the organic boundaries and specifically included new territory. The objection made that section 3 of chapter 1 of the charter prevented the fixing the boundaries as done is clearly decided to be not tenable in the late cases of Eastham et al. v. Steinhagen et al. (Tex. Sup.) 243 S. W. 457. There it is, in effect, held that the city is not confined to the provisions of its existing charter in fixing city boundaries, but could extend, if so ordered to be done, its limits by amending its charter pursuant to the provisions of the enabling act of 1913. As stated in that case by Justice Greenwood, and very correctly so:

"Since the Legislature could repeal section 3 [of the city charter], the same could furnish no obstacle to the exercise of this power. The home rule amendment and the enabling act transferred to the specified cities, through the agency of their qualified voters, the same power which the Legislature had theretofore possessed to change territorial boundaries, through the amendment or adoption of their charters, subject alone to the limitations expressed, which have no application in this case."

[2] It is further urged and relied on as a ground for the invalidity of the extension of the city limits that the extended limits included the town of Niles City, and "that the city relied and was dependent upon the Malone Bill (Acts 1921, 1 S. S. p. 153 [Vernon's Ann. Civ. St. Supp. 1922, arts. 773a–773d]) for authority to act in the premises, and the said Malone Bill is a nullity and is void." Whether or not the act of 1921 referred to is void for the reasons urged is entirely immaterial of consideration in this case, for Niles City is not a party to this suit, and neither has it, as a municipality, any control or authority under the law over the independent school districts named in this suit. Article 2851 Complete Tex. St. 1920, or Vernon's Sayles' Ann. Civ. St. 1914. The question of whether or not Niles City as a municipality was properly brought within the city of Fort Worth can be raised only by the proper authorities of Niles City or of the state. And it is thought the city of Fort Worth was not, as alleged, dependent upon the Malone Bill or act of 1921 for authority to make a valid extension of its boundaries. The act of 1913 affords ample authority, it is thought, for the city of Fort Worth to fix and extend its boundaries. There is no other alleged ground, we think, that would make void or invalid the election of July 22, 1922.

[3] In answering the second question it is believed that the extension of the city limits of Fort Worth in virtue of the statute of the state ipso facto extended the limits of the independent school district of the city so as to include the portions of the territory of the several independent school districts named in this suit. The enabling act does not in terms, nor by intention, express or implied, restrict the authority or power of the cities specified to fix or extend the city boundaries to territory not already incorporated. "The annexation," as provided in that act, can be "of additional territory lying adjacent to said city." The act, in other words, means to say that "territory" outside of the city limits, but adjoining thereto, can be annexed to the city. There is no limitation upon or as to the "territory" that can be annexed to the specified city. Had it been the general purpose and intent of the Legislature to confine the "territory" to be annexed to tracts of land and unincorporated places, and to exclude school districts, it could easily have been so expressed. The word "territory" is too comprehensive to gather from the act such a meaning.

[4] An incorporated territory, as a school district, is a mere institution established for public purposes, and whose legal existence can at any time be taken away in any manner that the Legislature may prescribe. As the Legislature had the authority to annex the whole area of the territory included in the independent school districts, then it could delegate the power to do so to the specified cities. Mt. Pleasant v. Beckwith, 100 U. S. 514, 25 L. Ed. 699. Besides, there is express authority of the Legislature to have the extended boundaries of the city include the incorporated territory of school districts. Article 2815c, Complete Tex. St. 1920 or Vernon's Ann. Civ. St. Supp. 1922, provides:

"Whenever the limits of any incorporated city or town within this state, which city or town constitutes an independent school district, shall be so extended or enlarged, or shall have been so extended or enlarged, as to embrace within the limits of such incorporated city or town the whole or any part of any independent or common school district adjacent to such incorporated city or town, that portion of such adjacent independent or common school district so embraced within the corporate limits of such incorporated city or town, shall thereafter become a part and portion of the independent school district constituted by such incorporated city or town."

The act further provides that the portion of the adjacent independent school districts taken into the city limits shall remain a portion of the original independent school districts only "where it shall be determined at an election held within such incorporated city or town by majority vote of those voting thereon that the territory or any portion thereof taken into the limits of such incorporated city or town shall not thereby become a part and portion of the independent school district constituted by such incorporated city or town."

Article 2856, Complete Tex. St. 1920 or Vernon's Sayles' Ann. Civ. St. 1914 specially provide that the general laws shall apply

to all districts created by special acts of the Legislature or under the general laws. By the articles it is clearly the expressed purpose and intent of the Legislature to provide for the enlargement of the independent school district of a city, and to diminish, if necessary to do so, an independent school district brought in part within the extended municipal limits of the city. The other portions of the statute are not in conflict with each other. The organization of the independent school district is not by the curtailment of a portion of it destroyed, but the remaining portion unannexed continues as an organization. And neither is the district "diminished or changed" within the meaning of article 2856b, Complete Tex. St. 1920 or Vernon's Sayles' Ann. Civ. St. 1914. That article has reference and application to the undertaking of the residents of an organized independent school district to have its territory voluntarily "diminished or changed" by a vote of its residents, and the article is not intended as a restriction upon the exercise of the right provided in article 2815c.

[5, 6] As to the third question, it is thought that, upon the annexation of portions of the independent school districts named to the city of Fort Worth, as the statute authorized, the city of Fort Worth thereby acquired the right to take possession and control of the property and the schools located within such attached portions. In making the change and in allowing the annexation, the Legislature intended that the liabilities as well as the rights of property of the original independent school districts, as to the parts of the territory detached, should be taken over by the city. The schoolhouses and school sites passed as a right appurtenant to the territory or parcels so allotted or annexed to the city. The board of trustees of the original independent school district would, by operation of law, lose all control and right of management over the transferred portion and the property thereon from and after the time the annexation or transfer becomes legally effective. But the vesting of the right in the city to take over the portion of territory of the original independent school districts also requires allowance by the city to the said original districts of its proper proportion of the value of the improvements made upon the premises. The city can make this payment after the accession, as the statute does not require it to be done before. Article 2815c expressly provides:

"If within the portion of such independent or common school district so brought within the limits of an incorporated city or town there should be situated any real property belonging to such independent or common school district, such city or town may acquire the same upon such terms as may be mutually agreed upon between the city council of such city and the authorities of such independent or common school district."

This provision evidently means to authorize the adjustment of equities between the two authorities voluntarily as they may agree, or by a judicial proceeding if necessary. The fact that the Legislature has authorized the authorities concerned to make an agreed settlement of equities or amount of compensation would not deprive the parties, in the absence of an agreement, from a judicial proceeding to enforce adjustment of equities and amount of compensation. Legislation therefore covers the point relative to the situation existing, and the annexation in no manner results in taking of property without compensation.

[7] The city of Fort Worth must and does legally assume its proportionate part of the outstanding bonded indebtedness, and must properly compensate such original school districts for the property taken over.

The judgment is affirmed.