## DILLY COUNTY LINE INDEPENDENT SCHOOL DIST. et al. v. BURNS.*
### (No. 7740.)

(Court of Civil Appeals of Texas. San Antonio. Dec. 15, 1926. Rehearing Denied Jan. 19, 1927.)

1. Schools and school districts ⟲⟲22—Act creating new school district in two counties embracing territory of old district held within requirements of constitutional provisions for formation of school districts (Sp. Laws 1925, c, 214; Const. art. 7, § 3).

, Sp. Laws 1925, c. 214, creating and incorporating new school district in two counties, including territory embraced in old district, and creating board of trustees therefor, empowered to levy taxes for schools on vote of majority of taxpayers, held, to comply with requirements of Const. art. 7, § 3, authorizing Legislature to form school districts by general or special laws without local notice, and to form them to embrace several counties, and to provide for tax assessment on vote of majority of qualified taxpayers.

2. Statutes ⟲⟲64(4)—Act creating school district which embraced territory of old district held not wholly unconstitutional, though part providing for assumption of old district's indebtedness should be void (Sp. Laws 1925, c. 214, §§ 13, 14, 15).

Sp. Laws 1925, c. 214, creating Dilly County Line independent school district, held not unconstitutional as a whole, though sections 13, 14, and 15 thereof, providing for assumption of obligations of old district, should be declared unconstitutional, in view of prime object of law to expand old district, which object would be fully attained, though sections relating to assumption of liabilities of old district were stricken.

3. Statutes ⟲⟲64(1)—Though parts of statute are unconstitutional, other parts will nevertheless be upheld, unless absolutely dependent on invalid part.

Fact that part of statute is unconstitutional does not authorize court to declare whole law unconstitutional, where valid parts are not absolutely dependent on invalid parts; valid parts being upheld, unless all provisions are so connected that it cannot be presumed Legislature would have passed one without the other.

4. Statutes ⟲⟲64(1)—Statute void as to one object, but valid as to another, should be upheld in part.

Where purpose of statute is to accomplish two objects, severable from each other, statute which is void as to portion relating to one object should nevertheless be upheld as to parts which have other object in view.

5. Statutes ⟲⟲64(1)—Where relation of parts of statute indicates Legislature would not have passed one without the other, entire statute falls with unconstitutional part.

Where mutual connection between parts of statute lead to conclusion that Legislature would not have passed one without the other, entire statute must fall with unconstitutional parts.

6. Statutes ⟲⟲96(2)—Act for assumption by new enlarged district of old district's debts held within implied authority of Constitution (Const. art. 7, § 3; Sp. Laws 1925, c. 214, § 13).

Const. art. 7, § 3, providing for formation of school districts by general law, and authorizing Legislature to pass laws for assessment of taxes and for management and control of schools in district, held by implication to authorize enactment of Sp. Laws 1925, c. 214, § 13, which provided for new enlarged school district's assuming debt created by old district, whose territory new district embraced and whose property new district acquired, as contrary holding would prevent absorption of old district and require repudiation of old district's debts; provision for assumption of debts being only effective way of securing payment.

7. Schools and school districts ⟲⟲41(2)—Requiring new district to pay old district's debt does not "create new debt."

Imposing payment of debt of old school district on new district, embracing same territory and receiving old district's property, does not create new debt, but merely provides for assumption of debt already created.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Creation of New Debt.]

8. Schools and school districts ⟲⟲22—Provision for formation of school district gives implied authority to Legislature to do all things necessary to render new district effective (Const. art. 7, § 3).

Const. art. 7, § 3, authorizing formation by Legislature of new school districts, impliedly gives Legislature authority to do all things necessary to render new district effective, and to protect claims of creditors against absorbed territory.

9. Constitutional law ⟲⟲13—General grant of power by Constitution implies power necessary to carry out grant.

Where Constitution gives general power or enjoins duty, it also gives by implication particular power necessary for exercise of powers specifically granted.

Appeal from District Court, Frio County; Covey C. Thomas, Judge.

Suit by Thomas E. Burns against the Dilly County Line Independent School District and others. Judgment granting plaintiff a permanent injunction as prayed for, and defendants appeal. Reversed, and writ of injunction set aside.

Jno. L. Pranglin, of Pearsall, and U. S. Algee and J. D. Dodson, both of San Antonio, for appellants.

Denman, Franklin & Denman, of San Antonio, for appellee.

FLY, C. J. Appellee filed a petition for a writ of injunction to restrain Ed. McCloskey, Emmett Reagan, W. T. Newsome, L. A.

Lowe, R. E. Adams, C. Jones, and Sackville, trustees of the school· district, the district itself, as well as its assessor and collector of taxes, from issuing bonds and from assuming any of the obligations of the old school district No. 13 and from the collection of any taxes. The court rendered a permanent injunction as prayed for in the petition.

The Thirty-Ninth Legislature of Texas, in March, 1925, passed a special act (Sp. Laws 1925, c. 214) creating and incorporating the Dilly County Line independent school district out of territory in Frio and La Salle counties. The district was given the territory embraced in Dilly common school district No. 13, in Frio county, theretofore created and established, and certain land situated in La Salle county, nót at that time included in any school district, and fully described said district by metes and bounds. Section 3 of the act placed the management. and control of the public free schools in the district in the hands of a board of seven trustees, prescribing their qualifications. Section 4 made the board of trustees a body politic and corporate in law, giving such board the power to contract, and to sue and be sued, and to receive any gifts, grants, donations, or devises made to or for the use of the public schools in the district. Section 5 provides for the election of the trustees, dividing them into two classes, and fixing their terms of office. Section 6 provides for taking and subscribing the constitutional oath of office, and section 7 provides for meetings of the board of trustees, quorums and the election of officers; Section 8 is as follows:

"The trustees of said Dilly County· Line independent school district shall have power to levy and collect an annual ad valorem tax of not exceeding the constitutional limit as is now or may hereafter be adopted for the maintenance of the public free schools therein, and a tax of not exceeding 50 cents on the $100 of taxable property within said district, for the purpose of erecting, constructing, repairing, equipping, or the purchase of site or sites, or either,. of public free school buildings within the limits of said district, provided, however, that the amount of maintenance tax, together with the bond tax of said district, shall never exceed the constitutional limit as is now or may hereafter be adopted. Said trustees shall have power to issue coupon bonds of said district for the purchase of building sites, building purposes, repair, or equipment of such building, which bonds shall be payable serially or otherwise, not exceeding forty years from their date, in such sums as they shall deem expedient, which said bonds shall bear interest at not exceeding 6 per centum per annum: Provided, however, that when such buildings are to be constructed of wooden materials the bonds herein provided for shall not run for a longer period than twenty years; provided that the aggregate amount of bonds for the above named purposes shall never reach such an amount that the tax of 50 cents on the $100

valuation of taxable property in said district shall not be sufficient to pay the current interest and create a sinking fund sufficient to pay the principal ·at maturity; and provided further, that no such tax shall be levied and no such bonds shall be issued until after an election shall have been duly held within said district, wherein a majority of the tax paying voters voting at an election to be held for that purpose shall have voted in favor of the levying of said tax or .the issuance of such bonds or bond, as the case may be, provided that the specific rate of tax need not be determined at such election."

Sections 9 and 10 provide for calling elections by order of the trustees on petitions of at ·least 10 taxpaying voters of the district, providing for the machinery of the election, giving notices and all other necessary things in regard to the election and declaration of the result. Section 11 provides for the choice of an assessor and collector of taxes and his compensation. Section 12 makes provision for property valuations and equalization of taxes, and sections' 16 and 17 provide for the application of general laws in all matters not provided for in the special act.

[1] The provisions cited, and whose contents are noted, are not assailed on any ground by appellee, and, unless they are destroyed by the unconstitutionality claimed against sections 13, 14, and 15 of the act, the law should not be declared unconstitutional as a whole. There can be no doubt that the Constitution of Texas authorizes the Legislature to provide for the formation of school districts by general or special laws, without the local notice required in other cases of special legislation, and to form them so as to embrace parts of two or more counties, and to provide for the assessment, levy, and collection of taxes, when a majority of the qualified property taxpaying· voters of the district shall have voted the tax. The act in question fully conformed to the requirements of the Constitution. Article 7, § 3, Const.; Moerschell v. City of Eagle Lake (Tex. Civ. App.) 236 S. W. 996.

[2] It is tacitly conceded that there are no unconstitutional provisions in the act, ex cept those contained in sections 13, 14, and 15; but it is contended that the taint from those three sections contaminates with unconstitutionality and destroys the whole of the act. The three sections which appellee contended were unconstitutional, and which contention was sustained by the lower court, were 13, 14, and 15 of the Act of March 24, 1925. Section 13 provided:

"That any ánd all outstanding indebtedness and bonds of said Dilly common school district No. 13, in Frio county, Texas, be and the same is hereby validated, and all such indebtedness and all bonds outstanding of said Dilly .common school district No. 13 shall be assumed by and are hereby made binding obligations of the said. Dilly County Line independent school district, as the same is created by this act."

Section 14 continued in existence the local maintenance tax then existing in the old district until a majority of the qualified tax-paying voters of the new district should change the same under the general statutes. Secton 15 vested the title to all the property in the old district in the new district.

[3-5] The rules to govern when only a part of a statute is constitutional are that, if the valid parts of a statute are not absolutely dependent on the invalid part, but contain useful and salutary provisions, it would be inconsistent with just principles of constitutional rights to strike down the whole law. Therefore, if a part of a statute is unconstitutional, that fact does not authorize courts to declare the whole law unconstitutional, "unless all the provisions are connected in subject-matter, depending on each other, operating together for the same purpose, or otherwise so connected together in meaning, that it cannot be presumed the Legislature would have passed the one without the other." The purpose of the enactment of the statute will be looked to. If that purpose be to accomplish two objects, which are severable from each other, and is void as to one and valid as to the other, then only the invalid portion should be declared void, and the valid part upheld. If, however, there be such mutual connection between the parts as to lead to the inevitable conclusion that the Legislature would not have passed the one without the other, then the whole statute would fall with the unconstitutional parts. Cooley, Const. Lim. (7th Ed.) pp. 246–248.

The prime, the chief, object in enacting the special law was to expand the old district and make it more efficacious in advancing the cause of education of the children included therein, and that object was fully attained if sections 13, 14, and 15 be held invalid and be stricken from the act. The law would in reason and common sense have been enacted, if no effort had been made for the validation and payment of the debts created by the old district. The end to be attained was obtained without the aid or assistance of the three sections assailed as unconstitutional, and it should stand as a clear constitutional expression of the will of the Legislature and the desire of the people of the district. The chief desire of the Legislature was to create a new district, with more taxable property, to render more efficient the proper educational training of the children, and the assumption of the debt of the old district was a mere incident thereto, which might be omitted, and not injure or impair the efficacy of the law in the creation of a larger district. We hold, therefore, that the act is valid and effective, although the three sections, 13, 14, and 15, be declared unconstitutional and void.

The Constitution gives full authority to the Legislature to provide for the formation of school districts by general or special laws, and lying in one or more counties, and in connection with that grant of power provides:

"And the Legislature shall be authorized to pass laws for the assessment and collection of taxes in all said districts, and for the management and control of the public school or schools' of such district, whether such districts are composed of territory wholly within a county or in parts of two or more counties." Const. art. 7, § 3.

[6, 7] The constitutional grant of power to the Legislature to create new districts carries with it the power to provide for existing debts. Without that power chaos and uncertainty as to debts already existing would impair the credit of school districts and render uncertain the payment of debts. If a portion of a new district has voted a tax to pay an existing debt, necessarily the Legislature must have the power to provide for payment of the debt, and the terms of the Constitution have been fully met by a vote of the people of the old district. Imposing the payment of the old debt is not creating a new debt, it is merely placing the assumption of a debt already created by a vote and taxes provided for it. In analogous cases of cities extending their boundaries and absorbing other school districts, it has been decided that the city will be charged with the assumption of the debt of the absorbed territory. In the recent case of City of Houston v. Tod (Tex. Civ. App.) 258 S. W. 839, where an old district had been absorbed by an extension of the city of Houston, which was an independent school district, it was held that the city was liable for part of the debt of the absorbed territory, whether it made provision for the assumption of it or not. The Court of Civil Appeals of the First District, through Chief Justice Pleasants, in answer to the claim of a taxpayer that an assumption of the debt by the city was a violation of article 7, § 3, of the Constitution, held:

"The quoted provision of the Constitution can have no application to a liability created by the Legislature in adjusting the equities arising from the practical operation of the statutes regulating the creation and changing of school districts in the advancement of the educational interests of the state. That provision of the Constitution clearly applies only to debts directly created or contracted by the city in the exercise of its functions of municipal government."

A writ of error was granted in that case by the Supreme Court, but in affirming the judgment of the Court of Civil Appeals the Commission of Appeals held that the decision was correct. It held that the Legislature had the power, in the protection of the bondholders, to make the new district liable for the debts created by the separate school districts. The opinion of Chief Jus-

tice Pleasants, as well as one by Associate Justice Levy, rendered for the Court of Civil Appeals of the Sixth District, in case of Washington Heights Dist. v. City of Fort Worth, 251 S. W. 341, were highly approved. In the latter case the city of Fort Worth had annexed an independent school district and Judge Levy said:

"The city of Fort Worth must and does legally assume its proportionate part of the outstanding bonded indebtedness, and must properly compensate such original school districts for the property taken over."

Those cases are parallel to this case, and are decisive of the right of the Legislature to require the new district to assume the debt created by the old district, especially as it had been given the property of the old district.

[8, 9] It has been held by the Supreme Court in Land & Cattle Co. v. McCabe, 72 Tex. 59, 12 S. W. 165, that the additional tax, provided for in the Constitution, on which an election is required, must be for only two objects, to supplement the state school fund, and build school houses, and, if that be correct, then the outstanding debt of an absorbed independent school district could not be legally and constitutionally voted on and assumed, and unless the Legislature could compel the assumption of the debt by the new district, the claim of those who had furnished money to the old district might be defeated. No such state of affairs was contemplated by the Constitution, but when it permitted the creation of new districts by the absorption of old ones it impliedly gave authority to the Legislature to do any and all things necessary to render effective the new district and protect those who had claims against the absorbed territory. As said by Judge Cooley in his Constitutional Limitations at page 98:

"The implications from the provisions of a Constitution are sometimes exceedingly important, and have large influence upon its construction. In regard to the Constitution of the United States, the rule has been laid down that, where a general power is conferred or duty enjoined, every particular power necessary for the exercise of the one or the performance of the other is also conferred. The same rule has been applied to the state Constitution, with an important modification, by the Supreme Court of Illinois: 'That other powers than those expressly granted may be, and often are, conferred by implication, is too well settled to be doubted. Under every Constitution the doctrine of implication must be resorted to, in order to carry out the general grants of power. A Constitution cannot from its very nature enter into a minute specification of all the minor powers naturally and obviously in it and flowing from the great and important ones which are expressly granted. It is therefore established as a general rule that, when a Constitution gives a general power or enjoins a duty, it also gives by implication every particular power necessary for the exercise of the one or the performance of the other. The implication under this rule, however, must be necessary for the exercise of the one or the performance of the other.'"

Of course, as said in the Illinois decision, the implication must be a real, and not a fancied, necessity. In no other way than by making the new district liable for the absorbed old district debts can the power given the Legislature be effectively exercised. The debts cannot be repudiated; the only effective way to secure them is to make the new district assume them and no provision of the Constitution is violated thereby.

We have found no Texas case that holds that article 7, § 3, of the Constitution, would prevent a Legislature from making the whole of a new district created by it liable for the debts created by having an old district contained within the new. The cases relied on by appellee are those where municipal corporations had extended their boundaries and sought to make new territory responsible for the old debts. The cases mentioned, however, are in seeming conflict with the later cases on the same subject. To hold that it is unconstitutional for the Legislature to make the new district liable for the debts of the old district absorbed, then to hold that the new district cannot be authorized by the Legislature to vote to assume the old debts, would either prevent an addition to an old district when once formed, or prevent an old district from being absorbed by a new, and fix it so that, to establish the formation of new districts, the old debts must be repudiated. Neither the case of Crabb v. Celeste Ind. School Dist., 105 Tex. 194, 146 S. W. 528, 39 L. R. A. (N. S.) 601, Ann. Cas. 1915B, 1146, nor Millhollon v. Stanton Ind. School Dist. (Tex. Com. App.) 231 S. W. 332, have any reference to the powers of a legislature under article 7, § 3, in regard to the creation of school districts, but apply alone to the acts of school districts to place prior debts on newly acquired territory.

In speaking of the power granted in article 7, § 3, to the Legislature to form districts, Judge Gaines, in State v. Brownson, 94 Tex. 436, 61 S. W. 114, held that "purpose of the provision quoted was to give the Legislature a free hand in establishing independent school districts." The Legislature would not have a "free hand" in establishing such districts, but would be fettered and handicapped, so as to be unable to form efficient, active districts, if prohibited from forming school districts out of any territory that was already a school district owing debts. Such a construction would greatly impair the power to form school districts deemed necessary, and in many instances would completely destroy such power. But it has been repeatedly held that existing school districts, and even incorporated cities, forming independent school districts, may under the con-

(290 S.W.)

stitutional warrant be included in a new district created by the Legislature. If so, the Legislature would be empowered to provide for the payment of the debts of the old district, and this, as herein shown, could not be done by providing for an additional tax to be voted on by the qualified voters, because the tax could only be additional to the state tax. It would be an absurdity to have a district within a district providing taxes to meet an outstanding indebtedness. The Legislature must of necessity have the implied power to place the debt on the new district. The Constitution does not prohibit it, and necessity and common sense commend it.

The statement of facts shows that the Dilly County Line school district lies partly in Frio and partly in La Salle county. It absorbed Dilly common school district No. 13, which was wholly in Frio county, and was created in 1906. On April 10, 1913, the common school district issued $14,000 in bonds, of which $4,000 had been paid. At the time the new district was created, which absorbed the old district and took in new territory in La Salle county, the old district contained 35,577 acres of land; the new district contains 55,183.21 acres. The maintenance tax of the old district was 75 cents on the $100 valuation of property, and the new district levied a tax of 90 cents, 15 cents of which was to be used in paying the debt of the old district. In May, 1926, an election was duly held and the issuance of $55,000 in bonds authorized, to build and equip school buildings. Appellee owned land in the old district, and more in the new district, and seeks by this suit to defeat the tax for school purposes levied against his property.

The judgment will be reversed, and the writ of injunction in all things set aside.